**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ROCKY L. COE,**

                Plaintiff,

                                              **Case No. 07-C-269**

      -vs-

**MILWAUKEE COUNTY,**
**AEGIS CORPORATION,**
**WILLIAM J. DOMINA and**
**MICHAEL MAYO, Sr.,**

                Defendants.

---

## DECISION AND ORDER

---

This matter relates to attorney Rocky Coe's ("Coe") representation of Milwaukee County Supervisor Michael Mayo. Coe is a licensed attorney and appears *pro se* as the plaintiff in this case. Now before the Court are two separate motions for summary judgment, one filed by Milwaukee County, Aegis Corporation ("Aegis") and William J. Domina ("Domina"), the other filed by Mayo.

Coe failed to respond to the defendants' proposed findings of fact. Realizing his mistake after reading the defendants' reply, Coe filed a response to the defendants' "request for admissions." Coe argues that he thought he was complying with all of the relevant summary judgment procedures. Coe's *pro se* status does not excuse this failure, especially since Coe is a licensed attorney with over 30 years of experience.

More importantly, Coe's belated response does not in any way attempt to *comply* with the relevant local rules of procedure. *See* Civil L.R. 56.2(b)(1) ("Any materials in opposition to a motion filed under this rule . . . must include . . . A *specific response* to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists"). Coe's continued disregard of the Court's local rules, even in the face of multiple reminders and warnings, demonstrates that Coe is willfully ignoring these rules. Therefore, the Court will accept the defendants' proposed findings of fact as true for purposes of these motions. *See* Civil L.R. 56.1(a)(1) ("any factual assertion in the movant's affidavit(s) or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit(s) or other admissible documentary evidence contradicting the factual assertion").

For the reasons that follow, the defendants' motions for summary judgment are granted. This case is dismissed.

## BACKGROUND

On February 8, 2004, Mayo's aide Barbara Hampton filed a complaint with the EEOC against Milwaukee County. In the Complaint, Hampton alleged that from 2002 until December 2003, Mayo demanded sexual favors from her and told her she would lose her job if she did not comply. Hampton's Complaint was cross-filed with the ERD. The EEOC issued a finding of "no probable cause." Subsequently, the ERD issued a "probable cause" finding. The Hampton matter ultimately settled in February, 2006.

-2-

Case 2:07-cv-00269-RTR   Filed 11/25/08   Page 2 of 13   Document 60

Aegis is a private corporation that acts as a general administrator for several insurance companies, including Wisconsin County Mutual Insurance Corporation ("WCMIC"). WCMIC is a mutual insurance company that writes insurance policies throughout the state of Wisconsin. Neither Aegis nor WCMIC are governmental entities. WCMIC issued an insurance policy to Milwaukee County. Aegis/WCMIC maintains a Listing of qualified counsel that it hires to represent WCMIC insureds.

In late 2003/early 2004, when Hampton first approached the County with her claims, Domina spoke with Mayo about those claims and told Mayo that he could seek legal advice. However, Domina never told Mayo that the County or Aegis/WCMIC would pay for Mayo's attorney. By letter to Coe dated February 24, 2004, Domina acknowledged that Coe was representing Mayo and advised that Aegis/WCMIC "indicated that they would consider authorizing payment for legal counsel for Mayo in this matter" but will "restrict its approval to those counsel who are qualified on [Aegis'] attorney qualification list for the insurance company."

At or around the time Hampton filed her complaint against the County, Domina provided notice of the complaint to Aegis/WCMIC as the County's insurance carrier. Brian Knee was the Litigation Manager to the Hampton matter. As part of Knee's assignment to the Hampton matter, he selected counsel, received and reviewed pleadings and status letters, and reviewed and approved invoices. In late February 2004, Knee selected Lindner & Marsack, S.C. from the Listing to represent the County in the Hampton matter. In late February 2004, Knee selected Emile Banks & Associates, LLC, from the Listing to assist

-3-

Case 2:07-cv-00269-RTR   Filed 11/25/08   Page 3 of 13   Document 60

Mayo with any questions he may have with the process, despite the fact that Aegis/WCMIC was not obligated to assign Mayo an attorney under the policy of insurance. Attorney Emile Banks, an African-American attorney, had a conflict and could not accept the assignment since Hampton had previously made contact with him.

Even if Coe was on the Aegis/WCMIC Listing, Knee has the unilateral authority to hire/assign attorneys from the Listing, and he never would have selected Coe to represent Aegis/WCMIC's insureds. Coe has never represented clients for an insurance company and has never represented any individual and been required to follow insurance company reporting guidelines. Coe charged $275 per hour to represent clients in 2004, while Aegis/WCMIC paid approximately $150 per hour to counsel on its Listing.

Additionally, Knee received a copy of the Wisconsin Supreme Court's decision in *In re Disciplinary Proceedings Against Coe*, 2003 WI 117, wherein the court upheld a referee's determination that Coe did not violate any ethical rules. However, Coe was so disrespectful to the referee that the Supreme Court admonished Coe for his conduct. For example, Coe accused the referee of discrimination, referred to one of the referee's comments as a "rare moment of intellectual activity," and stated that "it would be easier for a snowman to put on a gasoline suit and stroll hand in hand with the devil through the flames of hell, than for me to get a fair report from this referee." *In re Coe*, 2003 WI 117 at ¶ 35. After receiving and reading this decision in March 2004, Knee never would have selected Coe to represent any of Aegis/WCMIC's insureds.

On March 1, 2004, Attorney James Scott from Lindner & Marsack filed a notice of appearance on behalf of the County in the Hampton matter. Throughout the Hampton matter, Attorney Scott consulted with Knee on the handling of the Hampton matter and provided Knee with relevant documents that were filed with the EEOC and the ERD. Attorney Coe never consulted with Knee on the handling of the Hampton matter or received approval to file the countless documents he filed with the EEOC and ERD.

In early March, 2004, Aegis/WCMIC offered Attorney Andrew Phillips to assist Mayo with any questions he may have with the process, despite the fact that it was not obligated to assign Mayo an attorney under the policy of insurance. Mayo advised Knee that he needed to think about it and never called back. Instead, on or around March 4, 2004, Coe contacted Knee by telephone and Knee understood that Coe was representing Mayo and Mayo was declining the offer to have an attorney selected and paid for by Aegis/WCMIC. During this telephone conference, Knee informed Coe that he would not select or retain Coe to represent Mayo because Coe was not on the Listing. When Coe asked how to get on the Listing, Knee informed Coe that he should contact David Bisek to inquire about the procedures that Aegis/WCMIC utilize to add counsel to its Listing. Coe never submitted anything to Bisek.

By letter to Coe dated March 31, 2004, Aegis/WCMIC stated that it wished to "be proactive and head-off any possibility that the interests of Milwaukee County and Mayo may conflict" and that is why Aegis/WCMIC was "willing to assign an attorney for [Mayo,]" but the attorney "must come from our approved list." In spite of Knee's clear statements in this

letter, that Aegis/WCMIC would only retain an attorney for Mayo from its Listing and Coe was not included on the Listing, Coe represented Mayo and attempted to collect for those legal services from Aegis/WCMIC. On February 17, 2005, Coe sent Mayo a "Final Invoice" in the amount of $9,900.

Despite having no obligation to pay Coe's invoice, on April 27, 2005, Aegis/WCMIC paid $9,900, the full amount of the "Final Invoice"; the check noted that this was "full and final payment for the Hampton/Mayo matter." In an accompanying letter, Aegis/WCMIC made it "crystal clear that this is the one and only payment that will be made in regards to this matter. There will be no further drafts cut and no further invoices honored." The $9,900.00 payment covered Coe's representation of Mayo through the conclusion of the EEOC matter. Coe did not communicate to Mayo that the $9,900.00 check would be the one and only payment that would be made from Aegis. Coe advised Mayo that he should continue to represent him. Coe advised Mayo that he thought Aegis would pay his legal fees.

Subsequent to Coe receiving the $9,900.00 payment, the matter proceeded before the Equal Rights Division ("ERD") against Milwaukee County. Mayo was not a party to the ERD matter. Even after receiving the "one time payment" of $9,900, Coe continued his attempts to participate in the Hampton matter on behalf of Mayo and continued to bill Aegis/WCMIC for his services.

For example, on June 6, 2005, Coe filed a Notice of Appearance and Limited Position with the ERD. On October 13, 2005, Coe sent a letter to the Administrative Law Judge ("ALJ") and requested the opportunity to participate in the matter. On October 17, 2005, the

-6-

Case 2:07-cv-00269-RTR   Filed 11/25/08   Page 6 of 13   Document 60

ALJ ruled that Mayo was not a party to the hearing and his only standing in the proceedings was as a member of the public. On October 22, 2005, Coe asked the ALJ to reconsider his ruling. On October 31, 2005, the ALJ denied Coe's request for reconsideration. On November 11, 2005, Coe filed an interim appeal with LIRC. On November 17, 2005, LIRC declined to take any action on the interim appeal. On November 28, 2005, Coe filed a motion for reconsideration with LIRC. On November 30, 2005, LIRC denied the request for reconsideration. For these continued, unauthorized efforts to intervene in the ERD matter, Coe demanded that Aegis/WCMIC pay him and submitted invoices to Aegis/WCMIC for an additional total amount of $17,187.50 for legal services provided to Mayo from May 2, 2005 to April 4, 2006.

Coe and Mayo were primarily concerned with Mayo's political career and reputation, both of which are not insured by Aegis/WCMIC under the policy of insurance it issued to the County. By letter to Attorney Scott and Domina dated March 5, 2004, Coe argued that the County was attempting to avoid liability "in this one instance" while Mayo's "future may be destroyed for all time." He also stated that "unique political dynamics make this a sensitive case." By letter to the EEOC dated April 20, 2004, Coe stated that the filing of the charge suggested someone was trying to "negatively influence the career aspirations of Mayo and the outcome of the recent election." By letter to the ERD dated June 6, 2005, Coe stated that "it would have been interesting for the ERD to explain why it is believable that Ms. Hampton would only make these allegations and filings in good faith around the time election petitions were filed and just before Mr. Mayo's constituents were voting whether to retain him." By

-7-

letter to LIRC dated November 28, 2005, Coe raised Mayo's property interest in his voter constituency in support of his argument that Mayo was entitled to participate in the ERD hearing based on constitutional due process.

Knee did not consider Coe's (or Mayo's) race in evaluating either whether to hire Coe to defend Mayo or whether to pay Coe for legal services rendered to Mayo. Aegis/WCMIC has qualified African-American attorneys that regularly represent its insureds. The County has African-American attorneys employed in the Office of Corporation Counsel. The County does not make any decisions regarding Aegis/WCMIC's Listing, selection of attorneys from the Listing, or payment of fees. Domina also does not make any decisions regarding Aegis/WCMIC's Listing, selection of attorneys from the Listing, or payment of fees.

Coe's claim against Mayo is one for breach of contract. Coe did not provide Mayo with any written notice that he was going to sue him. Coe did not serve Mayo with a notice of injury or a notice of claim. There is no written contract between Mayo and Coe. There is nothing in writing that memorializes an agreement by Mayo to personally pay Coe for legal services rendered. Mayo did not orally agree to personally pay Coe for legal services rendered. Coe did not have Mayo sign a retainer agreement. Coe did not obtain a retainer from Mayo prior to commencing his representation of him. Coe never received a single payment from Mayo.

-8-

Case 2:07-cv-00269-RTR   Filed 11/25/08   Page 8 of 13   Document 60

## ANALYSIS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### I. Breach of contract

Coe's first claim is for breach of contract. However, Coe seems to back away from this claim when he states that "all defendants have intentionally tried to distort Plaintiff's State contract claim of unjust enrichment into one of formal contract criteria. This clearly is wrong and Plaintiff unequivocally admitted in the pleadings that there was never a formal contract." (D. 53 at 27). The Court agrees and finds that the formal elements for a breach of contract claim are absent in this case with respect to all of the defendants. *See, e.g., Anheuser-Busch, Inc. v. Beer, Soft Drink, Water*, 280 F.3d 1133, 1136 (7th Cir. 2002) (a contract, express or implied, requires an offer and acceptance, meeting of the minds, and payment of consideration); *Degerman v. S.C. Johnson & Son, Inc.*, 875 F. Supp. 560, 562 (E.D. Wis. 1995) (oral contract requires a meeting of the minds between the parties with

respect to the essential terms of the agreement and an intention by the parties to be bound by the oral agreement).

Additionally, the parties are in apparent agreement that this is the only claim that pertains to defendant Mayo. Even if the formal elements of a contract were present with respect to Mayo, Mayo is a governmental official entitled to notice of injury and notice of claim under Wis. Stat. § 893.80(1). Coe failed to satisfy these requirements, which are "necessary prerequisite[s]" to all actions brought against governmental entities and officials in Wisconsin. *See City of Racine v. Waste Facility Siting Bd.*, 216 Wis. 2d 616, 620, 575 N.W.2d 712 (1998).

**II.     Tortious interference with contract**

The elements for a claim of tortious interference with contract under Wisconsin law are: (1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the plaintiff's damage; and (5) the defendant was not justified or privileged to interfere. *See Wolnak v. Cardiovascular & Thoracic Surgeons, S.C.*, 2005 WI App 217, ¶ 14, 287 Wis. 2d 560, 706 N.W.2d 667.

The elusive theory behind Coe's tortious interference claim apparently is that defendants Domina and Aegis knew that Mayo needed an attorney independent of the County in the Hampton matter. Therefore, Coe argues that Domina/Aegis/Milwaukee County encouraged Mayo to retain his own attorney, yet conspired to refuse payment for

-10-

Case 2:07-cv-00269-RTR    Filed 11/25/08    Page 10 of 13    Document 60

Coe's legal services under the WCMIC policy. Coe provides little in the way of coherent argument in support of this claim, and the Court is not inclined to invent arguments on his behalf. Suffice it to say, the Court is puzzled as to how this factual scenario, even if true, could be considered interference with Coe's separate arrangement with Mayo, or with Coe's legal business in general. Of course, this also assumes that there was a valid existing or prospective contract, which Coe failed to prove in any event. Ultimately, Coe failed to provide evidence in support of any of the elements of this claim, so it must be dismissed.

### III.    Racial discrimination

Coe articulates his race discrimination claim under the umbrella of 42 U.S.C. § 1981, which authorizes suits arising out of racial discrimination in the making and enforcing of contracts. The elements for a § 1981 claim are: (1) the plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).

Coe claims that Aegis, Domina and the County discriminated against him in this manner by refusing to allow Coe to represent Mayo through Aegis' approved attorney Listing. It is undisputed that the decision to keep Coe off the Listing (and to refuse payment after the initial one-time payment) was not motivated by Coe's race. Coe's "evidence" of

-11-

racial discrimination, such as it is, amounts only to convoluted speculation. Therefore, Coe's claim cannot survive summary judgment.

## IV. Unjust enrichment

Finally, the true absurdity of this case comes to life when examining Coe's claim for unjust enrichment. The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof. *See Ludyjan v. Continental Cas. Co.*, 2008 WI App 41 ¶ 7, 208 Wis. 2d 398, 747 N.W.2d 745.

None of these elements are satisfied in the instant case. Moreover, it is hornbook law that if a defendant declines the benefit in advance, there can be no recovery for unjust enrichment. *See Lawlis v. Thompson*, 137 Wis. 2d 490, 499 n.1, 405 N.W.2d 317 (1987). It is undisputed that Aegis refused any future attempts by Coe to provide legal services after the conclusion of the EEOC matter. In this light, Coe's persistent attempts to force his legal services on Aegis, along with his pursuit of an unjust enrichment claim in this lawsuit, are egregious and frivolous.[1]

---

[1] Coe's claim for attorney's fees is denied. Even if he had prevailed, 42 U.S.C. § 1988 does not authorize an award of attorney's fees to a *pro se* attorney litigant. *See Kay v. Ehrler*, 499 U.S. 432 (1991).

-12-

Case 2:07-cv-00269-RTR   Filed 11/25/08   Page 12 of 13   Document 60

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. The defendants' motion to strike plaintiff's joint response to defendants' request for finding of admissions [D. 57] is **GRANTED**;

2. The defendants' motions for summary judgment [D. 34, 39] are **GRANTED**; and

3. This matter is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 25th day of November, 2008.

        **SO ORDERED,**

        **s/ Rudolph T. Randa**
        **HON. RUDOLPH T. RANDA**
        **Chief Judge**